IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 12-cv-01661-RPM

CITIZENS FOR A HEALTHY COMMUNITY,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, and agency of the United States; and UNITED STATES BUREAU OF LAND MANAGEMENT, and agency within the United States Department of the Interior,

    Federal Defendants,

---

ORDER ON SUMMARY JUDGMENT MOTIONS

---

Applying under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et seq., Citizens for a Healthy Community ("CHC"), a non-profit 501(c)(3) organization concerned about the impact of oil and gas development in the Delta County, Colorado region, requested the Bureau of Land Management to provide the following information:

> The Expressions of Interest submitted for the parcels located in the Uncompahgre Field Office included in the August 2012 Oil and Gas Lease Sale, including information identifying the persons or entities who submitted the Expressions of Interest; and
> All documents related to the Expressions of Interest listed above.

After administrative appeals of the denial of that request, the agency's final decision on April 30, 2012, refused the request for the names and addresses of two submitters of Expressions of Interest ("EOI") claiming that the withheld information is protected from disclosure under Exemption 4 of the act, § 552(b)(4), because the EOI contains "commercial or financial information obtained from a person that is privileged or confidential."

Federal oil and gas leases are issued pursuant to competitive bidding at a public sale as the last step of a process that begins with the submission of an EOI and is described in the Declaration of Karen Zurek, attached as Exhibit A.

BLM policy is stated in BLM Instruction No. 95-164, dated August 19, 1995: "All BLM offices hold as confidential the names of all parties that file an informal EOI, even though those parties may not have requested confidential treatment, until two business days following the last day of the competitive lease sale."

The information required for the EOI is limited.

> -Your name or company name with mailing address and telephone number.
> -Complete legal land description broken into parcels of 2560 acres or less.
> -Name and address of any private surface owners.

The justification for applying Exemption 4 is not based on this information alone. The contention is that exploration for oil and gas on public lands is very competitive; that those engaged in that business do preliminary investigative work to consider the possibilities of the acreage they are interested in; that such work is protected information and that when the submitter's interest is known to its competitors, they obtain an unfair advantage and will bid against the submitter.

That contention runs directly contrary to the purpose of the public sale process. Competition in bidding advances the purpose of getting a fair price for a lease of publicly owned minerals. Moreover, the identity of the submitter may be relevant to the plaintiff and others who may raise concerns about the stewardship records of that potential owner, a factor relevant to the environmental impact of the proposed sale.

The information required to be provided by an EOI submitter is not protected by Exemption 4 and the plaintiff's request must be granted.

Upon the understanding that the August 9, 2012 sale has been continued indefinitely, the plaintiff's motion for preliminary injunction is moot and this civil action has now been decided on the merits. The plaintiff's APA claim is denied.

Accordingly, it is

ORDERED, that the plaintiff's motion for summary judgment is granted, the defendants' motion for summary judgment and to dismiss is denied and the clerk shall enter a final judgment ordering the United States Bureau of Land Management to release the information requested within 30 days from the entry of judgment.

DATED: February 13, 2013

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1-12-cv-01661-RPM

CITIZENS FOR A HEALTHY COMMUNITY,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, an agency of the United States; and

UNITED STATES BUREAU OF LAND MANAGEMENT, an agency within the United States

Department of the Interior

Defendants.

## DECLARATION OF KAREN ZUREK

I, Karen Zurek, hereby declare the following:

1. I am the Chief of Adjudications Minerals in the Colorado Field Office of the Bureau of Land Management (BLM) within the Department of the Interior. While I have worked for BLM for thirty-three years in various areas in oil and gas, coal, and mining claims; I have held this position for seven years. As the Chief of Adjudications Minerals, I am responsible for all aspects of oil and gas leasing, both pre- and post-lease sale. It is in my capacity as the Chief of Adjudications Minerals that I have personal and direct knowledge of the oil and gas leasing process within the BLM and, more specifically, within the Colorado Field Office of the BLM.

2. The following summarizes the current oil and gas leasing process for the state of Colorado:

    a. In order for lands to be considered for an oil and gas lease sale, a corporation or an

Exhibit B

individual must submit an Expression of Interest (EOI) or the BLM must make a motion to nominate particular lands. Once the leasing office receives an EOI, the EOI is entered into the BLM database and given a number known as an EOI number.

b. The lands suggested for lease sale in a particular EOI are then broken out into parcels of land no larger than 2560 acres. Each parcel is given a parcel ID number.

c. Then BLM checks the status of the land in each parcel to determine if lands are available for leasing. If lands are available for leasing, they are then slated for a specific sale. Oil and gas lease sales are held quarterly and correspond to specific regions within BLM territory.

d. The list of parcels slated to be leased are then sent to the relevant field office eleven months prior to the sale date. The field office is responsible for conducting the National Environmental Policy Act (NEPA) analysis.

e. If a listed parcel is found to be on a privately-owned surface that tops federally-owned minerals, a letter is sent to all private surface owners potentially affected by the lease sale. The letter informs them that the federal minerals below their surface lands have been nominated for leasing. This provides surface owners with notice that a lease sale may occur on their land and gives them two weeks to comment in support of or protest of the possible lease sale.

f. The field office then coordinates with the relevant BLM district office, Colorado Parks and Wildlife and any other surface management agency, in compliance with the Resource Management Plan (found on the Colorado Office's website), to apply initial stipulations to each parcel. Examples of stipulations that can be placed on parcels are those that limit lands to Controlled Surface Use, designed to protect sensitive soils; and Timing

Exhibit B

Limitations, designed to protect wildlife in the area of the potential lease sale. Parcels may also be deferred or withdrawn at this time if found to be unsuitable for leasing e.g., for environmental or cultural reasons. Once stipulations are applied BLM, at least two weeks prior to the start of an Environmental Analysis (EA), notifies the general public that specific parcels are being considered for a lease sale. During this two-week period the public is allowed to provide comments and feedback on the potential lease sale. This is known as the two-week Scoping Period.

g. The field office then collects the comments from the Scoping Period and incorporates them into a preliminary EA. Additional stipulations may be added to parcels or parcels may be deferred or withdrawn from the sale completely as a result of the public feedback.

h. Following the analysis of public comment, the preliminary EA and data collected from Google Earth maps, GIS Shapefiles and any other maps generated by the field office are released to the public in what is known as the 30-Day Comment Period. The preliminary EA and an unsigned Finding of No Significant Impact (FONSI) are posted on the field office website and the Colorado State Office website during this period. A press release is also issued notifying the public the BLM is accepting comments in support or protest of the proposed lease sale.

i. At the conclusion of the 30-Day Comment, the BLM field office responsible for the lease sale responds to all comments and incorporates the comments into the final EA. At this time additional stipulations may be added to parcels and additional lands may be deferred or withdrawn from the sale as a result of the comments.

j. When the Colorado State Office receives the final EA, parcels are assigned a serialized case number. A Sale Notice containing all of the parcels (with any stipulations) is then

Exhibit B

generated and posted on the Colorado State Office website 90 days prior to the lease sale. The Final EA, signed FONSI, updated Google Earth Maps, GIS Shapefiles and any other maps generated by the field office are also posted on the website at this time. This posting initiates the 30-Day Protest Period during which time the public again has an opportunity to protest the lease sale. To reiterate that the Sale Notice is an opportunity for public input, BLM issues another press release to alert the public that BLM is accepting protests on the lease sale parcels.

k. The Protest Period allows the public to express concerns about leasing on public lands and can encourage a parcel to be deferred or withdrawn from the sale. All properly filed protests are reviewed and given a written response.

l. In order for BLM to take public comments or protests into consideration, the comments or protests must provide a substantial statement of reasons for altering or withdrawing the lease sale. *See* 43 CFR § 3120.1-3. For protest information, the Colorado BLM public website is available at http://www.blm.gov/co/st/en/BLM_Programs/oilandgas/leasing.html. The February 14, 2013, lease sale Notice is available on the same website. A statement that a particular EOI submitter or bidder is not, in the opinion of the commentator/protestor, suitable for a lease, for example, is not considered a sufficient statement of reasons. A statement of reasons filed in support of altering or withdrawing a parcel or all parcels in a lease sale should relate to the parcel(s) of land being considered for sale and should concern an issue such as the air, water, wildlife, or cultural factors that surround the parcel(s).

m. The oil and gas lease sale is open to the public. Parcels are auctioned off to the highest bidder. Leases will be issued after all protests have been responded to and dismissed.

Exhibit B

    n. In accordance with IM 2013-026 two days following the lease sale, the names and identifying information of the EOI submitters are released to the public.

3. In relation to the case at hand, the lease sale for 22 parcels/30,000 acres of land managed by the Uncompahgre Field Office (UFO), UFO-NEPA #12-09, was originally slated to take place on August 9, 2012.

4. As with other lease sales, public comments were taken during a Scoping Period, a Comment Period, and a Protest Period. Plaintiff participated in each instance. During each instance of public input, the neither the Plaintiff, nor any other submitters, had access to EOI submitters' names or other identifying information. A copy of Plaintiff's Scoping Period comment is attached as Exhibit A.

5. During the public Comment Period, which took place from March 7, 2012 until April 20, 2012, the UFO received 677 comment letters (11 from government agencies, 620 from individuals, and 46 from organizations/associations). This information is found in Chapter 4 of the October 22, 2012, Final UFO EA posted on UFO's website. The comments were both in support of the potential lease sale and against the sale.

6. Plaintiff participated in this public Comment Period and submitted comments in protest of the sale. A copy of Plaintiff's comment is attached as Exhibit B.

7. In order to ensure that BLM had sufficient time to adequately analyze and respond to the significant number of comments, BLM indefinitely deferred the lease sale on May 8, 2012.

8. As a result of the deferral and the opportunity to review and consider public comments, some of the parcels were reconfigured and additional stipulations of approval were applied to other parcels. On November 16, 2012, BLM announced that the lease sale would be rescheduled for February 14, 2013.

Exhibit B

9. The Protest Period for the revised lease sale was from November 16, 2012, to December 17, 2012.

10. During the protest period, BLM received 171 protests, including a protest from the Plaintiff on December 14, 2012. Plaintiff's protest is attached as Exhibit C.

11. BLM is now in the process of reviewing public protests to determine whether or not the lease sale will proceed as scheduled on February 14, 2013, or if it will need to be deferred (again), withdrawn, or otherwise modified.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: December 20, 2012

*Karen Zurek* (signature)

Karen Zurek

Chief, Fluid Minerals Adjudication

Bureau of Land Management-Colorado

Exhibit B